**SO ORDERED.**
**SIGNED this 21st day of September, 2012**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## WINCHESTER DIVISION

In re:

Timothy G. Gilliam　　　　　　　　　　　　　　　　Case no. 12 -13085
Ammie L. Gilliam,　　　　　　　　　　　　　　　　Chapter 7

　　　　Debtors.

### MEMORANDUM

　　Terry Gregory, the Chapter 7 Trustee in this case, has objected to the debtors' claim of exemption. The Trustee objects to the debtors' claim of $6,819.83 attributable to the value of a 2007 Chevrolet Cobalt automobile. The basis of the objection is that the debtors are claiming the exemption in bad faith. The debtors failed to disclose that they owned a Cobalt in their

1

schedules. Specifically, the debtors, who are listed as the owners of the car on the title, failed to list the Cobalt on the schedule of their personal property. They failed to list the debt to Ascend Federal Credit Union secured by the Cobalt on the list of their secured debts. Instead, the credit union was listed as an unsecured creditor. Finally, they failed to list their daughter as a co-obligor on Schedule H.

Mr. Gilliam testified at the hearing on September 17, 2012 that he did not list the car as his asset because he believed the car belonged to his daughter. He explained that in 2007 he told his daughter that he would buy her a car worth $6000 for her high school graduation. His daughter decided that she wanted a new Chevy Cobalt which was worth approximately $13,000. To assist his daughter with purchasing the car, Mr. and Mrs. Gilliam bought the car and put it in their names. As an employee of Bridgestone Tire Company, Mr. Gilliam was entitled to a special $1000 discount provided to Bridgestone employees. Mrs. Gilliam co-signed a loan to Ascend to enable her daughter, who was not yet 18 at the time, to obtain the financing to buy the car. Both Mr. and Mrs. Gilliam signed the security agreement conveying a security interest in the car to the credit union. When Mr. Gilliam investigated the cost of insurance for his daughter for the new car, he testified that he discovered the cost of maintaining the insurance would have cost as much as contributing the $6000 for the purchase price. Father and daughter agreed that, rather than helping with the payment, Mr. Gilliam's gift to his daughter would be to keep her new car on his insurance along with two other vehicles that he and his wife drove.

Since the purchase, the debtors' daughter has been the only family member who used the Cobalt. She has made all of the payments on the car from her account from funds she earned. Mr. Gilliam testified that he did not provide any money for the payments. However, he never changed the name of the owner on the title and he continued to keep her on his insurance policy.

2

His daughter still has the car today and only $1905.17 is owed on the line of credit secured by the car. The credit union filed claim no. 5 reflecting the balance related to the line of credit secured by the Cobalt, and attached the documentation evidencing its lien.

Prior to the first meeting of creditors on August 6, 2012, the attorney for the credit union approached the debtors' attorney and informed him that the debtors owned an undisclosed vehicle. The debtors' attorney met with them and learned that they had purchased the Cobalt but that they believed it was their daughter's car. He explained to them that they would need to disclose their ownership of the vehicle. The credit union's attorney did not make an appearance in the case at the meeting of creditors. At the meeting, the trustee asked the debtors whether there were any other assets that they had forgotten to include. Mr. Gilliam admitted at the hearing that he responded "no" to the trustee's question thinking that his attorney was going to handle anything else that needed to be done about the disclosure of the vehicle.  The debtors' attorney explained that he failed to correct his client because he had a number of cases that day and the hearings were moving quickly. Mr. Gregory, not knowing of the existence of the Cobalt, filed a no asset report and abandoned all the property of the estate on August 7, 2012, the day after the meeting.

On August 22, 2012, within the same month of learning that they needed to disclose their interest in the car, the debtors filed an amended Schedule B disclosing the ownership of the Cobalt and an amended Schedule C exempting the equity in the Cobalt. On the same day Ascend Federal Credit Union filed its claim and attached the line of credit documentation and the title. On August 27, 2012, the trustee objected to the claimed exemption.

3

The debtors now value the car at $8,725. The credit union claims a security interest of $1905.17. The debtors claim an exemption in the remaining value of the $6819.83 as a means to protect their daughter's interest in the equity in the car. There is no proof in the record that the credit union was misled about the nature of the transaction between the debtors and their daughter regarding the car or that the debtors provided any financial assistance to their daughter for the payment of the loan used to purchase the car. The debtors' only support for her purchase was the benefit of the initial Bridgestone discount, execution of the guaranty, and the maintenance of the insurance. Mr. Gilliam testified that he had no intention of deceiving the court or the trustee. He believed that he did not own the car and that he had to list only those things "that he made payments on."

The issue before the court is whether these facts are sufficient to show that the claim of the exemption was made in bad faith. Two bankruptcy courts in the eastern district of Tennessee have addressed the question of whether the claim of an exemption in an asset which the debtor failed to disclose or even concealed can be claimed in good faith. *In re Mathis*, No. 03-17884, 2007 WL 954756 (Bankr. E.D.Tenn. March 29, 2007); *In re Clemmer*, 184 B.R. 935 (Bankr. E.D. Tenn. 1995). In *Mathis*, the asset was a claim in a class action lawsuit. The court found that

> In bankruptcy cases, however, the federal courts have created other grounds for denying an exemption. In particular, the bankruptcy court can deny an exemption if the debtor concealed the exemptible property. This rule enforces the provisions of bankruptcy law that require the debtor to make a full and honest disclosure of all assets. *Bauer v. Iannacone (In re Bauer)*, 298 B.R. 353 (8th Cir. B.A.P. 2003); *Sheehan v. Lincoln Nat. Life*, 257 B.R. 449 (N.D.W.Va. 2001)).
>
> "Concealment" of exemptible property might be taken to mean failure to disclose the property for any reason. The courts have not adopted such a strict rule. They have denied the exemption when the debtor acted in bad faith. "Bad faith" is a general term that covers fraud or other forms of dishonesty. The question seems to be whether the debtor knew the property should be disclosed in

4

>the bankruptcy case and decided not to disclose it so that it would be protected from the effects of bankruptcy.

*Mathis,* at *1(citations omitted.)

    The court finds that the debtors disclosed the debt to the credit union. The court finds Mr. Gilliam's testimony about his belief that the car belonged to his daughter to be credible. He readily explained the transaction to his attorney when questioned. There is no dispute that the creation of the equity that the debtors are claiming as exempt is the result of payments made by the daughter. The court has some concern about the debtors' intent based on Mr. Gilliam's admissions about the insurance and the failure to disclose that their daughter was a cosigner with Mrs. Gilliam on the line of credit, but the court does not find these two facts to be sufficient to overcome Mr. Gilliam's testimony regarding his intent, his understanding of the transaction and the fact that all of the parties have acted as though Miss Gilliam was the owner of the Cobalt for years. To the extent that the debtors' representations on their insurance applications may not be consistent with the position they are taking now, the court does not find that that inconsistency alone is sufficient to support a conclusion that the debtors' exemptions should be denied. *In re Clemmer*, 184 B.R. at 945 (holding that "prepetition bad faith actions of the debtor are insufficient to support a conclusion that the debtor's exemptions, to which he is legally entitled under state law, should be denied.").

    Mr. Gilliam's testimony at the 341 meeting is another troubling fact. He persisted in leading the trustee to believe that there were no other assets in his name. His explanation was that he thought that his attorney had agreed with him that the car was not his asset and that if anything else needed to be done, "his attorney was going to file something." His attorney also admitted that he should have corrected the statement but did not due to an oversight on his part.

5

The court is unable to extrapolate a dishonest intent from these actions. As the court found in the *Mathis* case,

> [t]he debtor's actions reveal both a lack of understanding and a lack of dishonest intent. Debtors can often be bewildered or at least very confused when it comes to bankruptcy. They fail to understand not only the effect of the bankruptcy on their rights and liabilities but also their duties in the bankruptcy case. They can miss points that are obvious to others and may be obvious to them in retrospect or after some explanation.

*Id.* at *4 (citations omitted).

In determining the existence of good faith, the Sixth Circuit requires that the court look to the totality of the circumstances. *Metro Employees Credit Union v. Okoreeh-Bah (In re Okoreeh-Bah),* 836 F.2d 1030, 1034 (6th Cir. 1988)(issue of good faith in proposing a chapter 13 plan). In determining the existence of good faith in the context of amending schedules, the court must also consider the totality of the circumstances. *See Moyer v. Hollinshead (In re Hollinshead)*, No. 09-8058, 2010 WL 727969 (B.A.P. 6th Cir. 2010)(unpublished table opinion); *In re Colvin*, 288 B.R. 477, 481 (Bankr. E. D. Mich. 2003). In this case the court is also persuaded by the fact that the transaction has a five year history of the daughter making the payments on what all members of the family believed was her car. The equity in the car which would now benefit the estate is not the product of the debtors' resources but rather those of their daughter. Had the debtors transferred the car at any time during the two years before their filing, the transfer might have been avoided; but the return of the car to the estate would have been subject to a lien in Miss Gilliam's favor for the payments she made. 11 U.S.C. § 550(e). To deny the exemption under these circumstances would result in a windfall to the creditors of this estate.

The facts of this case do not evidence an intentional concealment of property which the debtors knew to be theirs. Based on the totality of the circumstances of this case, the court finds

6

that the exemption was not claimed in bad faith and the trustee's objection is overruled. A separate order will enter.

###